UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NUtech Ventures )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>Norman Noble, Inc. )<br>)<br>    Defendant. )<br>) | Case No. 1:12-cv-2326-CAB<br><br>Judge Christopher A. Boyko<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING INTER PARTES REVIEW** |

Plaintiff NuTech Ventures ("NuTech") files this memorandum in opposition to Defendant Norman Noble, Inc.'s ("Noble") Motion to Stay Proceedings Pending Inter Partes Review (Docket # 12) ("Motion to Stay"), and respectfully states as follows:

### I. INTRODUCTION

Noble seeks a stay of this litigation for an indefinite amount of time pending the United States Patent and Trademark Office's ("PTO") decision on Noble's petition for Inter Partes Review ("IPR") of United States Patent 6,489,589 (the "589 Patent"), which was filed on December 21, 2012. The current IPR is a new procedure, effective September 16, 2012, which applies only to requests to the PTO for review of invalidity under 35 U.S.C. §§ 102 and 103. It

1

does not determine the many other affirmative defenses alleged by Noble. As the current IPR is a new proceeding, there is no telling in practical terms how long it might delay NuTech's ability to enforce its patent rights, but it could have the effect of staying this litigation for at least 22 months, plus the significant additional time associated with an inevitable appeal of the PTO's decision to the United States Court of Appeals for the Federal Circuit.

The relevant factors weigh against institution of a stay in this case. A stay would work prejudice against NuTech, as it would cause significant delay, would deny NuTech its choice of forum, and would run the risk of reinstituting litigation when memories have faded and documents may have disappeared. A stay would run through the expiration of NuTech's patent, in effect granting a compulsory license to Noble. A stay would not necessarily simplify the issues in this litigation, as the IPR is limited to invalidity contentions under 35 U.S.C. §§ 102 and 103, and does not determine Noble's many other affirmative defenses. Further, the majority of IPR proceedings do not result in cancellation of all claims, making it more likely than not the parties will subsequently be forced to resume litigation at a later date. Additionally, this Court is fully capable of adjudicating this matter — including Noble's invalidity claims — and will be able to do so in a more expeditious manner than the PTO. Finally, the stage of this litigation does not mitigate in favor of a stay, as this factor alone cannot justify imposition of a stay. This litigation is further advanced and will result in quicker adjudication than the IPR, which will not even be officially commenced until the PTO accepts Noble's IPR petition, if at all.

For these reasons, the Court should deny Noble's Motion to Stay.

## II. ARGUMENT AND AUTHORITIES

A.  **The New IPR Procedure Does Not Mandate a Stay**

Effective September 16, 2012, Congress instituted a new procedure for inter partes

review. *See* 35 U.S.C. § 311, *et seq.* An IPR allows a petitioner to request the PTO to cancel as unpatentable one or more claims of a patent only on a ground that could be raised under 35 U.S.C. §§ 102 or 103, and only on the basis of prior art consisting of patents and printed publications. 35 U.S.C. § 311(b). Once the IPR petition is filed, a patent owner may provide a preliminary response, which sets forth the reasons why no IPR should be instituted. 35 U.S.C. § 313. The PTO then has three months to determine whether to institute an IPR on at least one of the claims in the IPR petition. 35 U.S.C. § 314(b). The petition must shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least one of the claims challenged in the petition. 35 U.S.C. § 315(a).

Congress did not mandate a stay of a first-filed patent infringement action brought in federal district court upon the subsequent filing of an IPR petition. 35 U.S.C. § 315. Instead, if a petitioner first files a petition for inter partes review and subsequently files a civil action seeking a declaratory judgment of invalidity, the civil action is automatically stayed until either the patent owner moves to lift the stay or the patent owner files a civil action or counterclaim alleging that the petitioner infringed the patent. *Id.* § 315(a)(2). Accordingly, Congress determined the patent owner may elect to proceed with a civil action for infringement even when that action is filed after the IPR. *Id.* Congress also did not mandate a stay when the petitioner first files an IPR and later files a counterclaim challenging the validity of a claim of a patent. 35 U.S.C. § 315(a)(3).[1]

---

[1] Noble makes the assertion that "Congress anticipated that courts would stay litigation of patents-in-suit pending reexamination," and supports this claim only with an unpublished decision from 1987 — well prior to the current IPR statute, or even the prior inter partes reexamination procedure. (Doc. 12 at 5)

3

Under the prior reexamination procedures,

> once an order for inter partes reexamination of a patent has been issued under section 313, the patent owner may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the inter partes reexamination order, unless the court before which such litigation is pending determines that a stay would not serve the interests of justice.

35 U.S.C. § 318 (2010) (amended 2011). Under the new IPR procedure, there is no corresponding section to the prior section 318 which authorizes a stay unless the interests of justice would not be served thereby. Instead, as shown above, section 315 suggests Congress has taken a different approach to concurrent infringement and IPRs.

After the PTO decides to institute an IPR, it has one year to issue a final determination of the IPR. 35 U.S.C. § 316(a)(11). However, this period can also be extended for up to six additional months. *Id.* Further, these time periods can be adjusted in the case of joinder of additional parties. *Id.* A party dissatisfied with the final written determination of the IPR may appeal the decision to the United States Court of Appeals for the Federal Circuit. 35 U.S.C. § 141(c). An appeal from the PTO to the Federal Circuit took an average of 11.7 months to disposition in 2012. *See Median Time to Disposition in Cases Terminated After Hearing or Submission*, United States Court of Appeals for the Federal Circuit, *available at*, http://www.cafc.uscourts.gov/images/stories/thecourt/statistics/Median_Disposition_Time_Table_2003-2012.pdf (last visited Mar. 10, 2013).

    **B.**    **The Factors For Determining Whether to Institute a Stay Mitigate Against A Stay**

Under the prior inter partes reexamination procedure, which applied from 1999 to September 16, 2012, Courts typically considered: (1) whether a stay will unduly prejudice or present a clear tactical advantage to the nonmoving party; (2) whether a stay will simplify the

4

issues in question and trial of the case; and (3) the state of the litigation and the reexamination proceedings, including whether discovery is complete and whether a trial date has been set. *See Wonderland Nursery Goods Co, Ltd. v. Thorley Indus., LLC*, 858 F.Supp.2d 461, 463 (W.D. Pa. 2012); *Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005). Though courts have not considered many cases under the new IPR procedure, it appears that this three-part analysis will apply to the new IPR procedure as well. *See, e.g., Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*, SACV-12-21-JST, 2012 U.S. Dist. LEXIS 186322, *4 n.1 (C.D. Cal. Dec. 19, 2012). Each of these factors mitigates against a stay, or at the very least, the balance of these factors weighs against institution of a stay.

  1. **A Stay Would Prejudice NuTech and Would Provide a Tactical Advantage to Noble**

The first factor is whether a stay will unduly prejudice or present a clear tactical advantage to the nonmoving party. *See Wonderland*, 858 F.Supp.2d at 463. Federal district courts review this factor by carefully considering whether there is "even a fair possibility that the stay would work damage on another party." *Belden Techs., Inc. v. Superior Essex Commc'ns, LP*, No. 08-63-SLR, 2010 U.S. Dist. LEXIS 90960 (D. Del. Sept 2, 2010) (*citing Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F.Supp. 656, 658 (D. Del. 1990)). If even a fair possibility of prejudice to the non-moving party is shown, the party seeking a stay must then make out a "clear case of hardship or inequity in being required to go forward." *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, No. 3-09cv791, 2010 U.S. Dist. LEXIS 45654, *6 (E.D. Va. May 7, 2010) (*citing Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). If hardship or inequity cannot be shown by the party instituting an IPR, a stay is not merited. *Id.* Indeed, "a trial court abuses its discretion when it grants a stay of indefinite duration in the absence of a pressing need." *Id.* at *9 (*citing Cherokee Nation of Oklahoma v. U.S.*, 124 F.3d 1413, 1416 (Fed. Cir. 1997).

NuTech would be prejudiced by the grant of a stay pending resolution of the IPR, which is still in its infancy. As described above, an IPR will likely take a minimum of 16 months, and could take up to 22 months until final determination by the PTO. *See* 35 U.S.C. §§ 311, 315, 316. Additionally, the final determination could then be appealed by either party to the Federal Circuit, which takes, on average, a year to dispose of appeals from the PTO. Thus, NuTech's ability to enforce its rights as a patent owner could be delayed for 32 months or longer if the Court decides to institute a stay of this litigation in favor of the IPR. Then, assuming at least one of NuTech's claims survives the IPR, NuTech would be forced to start litigation anew, after considerable delay, and would thus be forced to wait even longer to vindicate its rights.

As numerous courts have found, "even a conservative estimate of a delay of several years is long enough to work considerable prejudice upon the non-moving party." *ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 826 F.Supp.2d 348, 351 (D. Mass. 2011); *Sunbeam*, 2010 U.S. Dist. LEXIS 45654 at *4. This is especially true where, as here, the PTO has not even made the decision of whether to institute the IPR, leading to additional prejudice and uncertainty. As one Court put it, "the principle that justice delayed is justice denied applies with full force to the patent process." *ESN, LLC v. Cisco Sys., Inc.*, No. 5:08-CV-20, 2008 U.S. Dist. LEXIS 108327, *9 (E.D. Tex. Nov. 20, 2008). Indeed, if a stay were instituted, and at least one claim survives the IPR, NuTech will be forced to commence litigation after that long delay years down the road, when evidence may become more difficult to access as witnesses may become unavailable, memories fade, and even more time has passed from the invention claimed in the '589 patent, which is already nearly twenty years old. *See Wyeth v. Abbott Labs.*, No. 09-4850, 2011 U.S. Dist. LEXIS 9824, *6 (D. N.J. Jan. 31, 2011); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 09-

5142, 2011 U.S. Dist. LEXIS 11488, *3 (D. N.J. Feb. 4, 2011).[2]

Noble claims that NuTech cannot suffer prejudice because it is not a direct competitor of Noble, and has not sought a preliminary injunction in this case. (Doc. 12 at 7-8) This argument rings hollow. It is "not necessary that the parties be direct competitors for prejudice to inure to the patentee." *Wonderland*, 858 F.Supp.2d at 464. Indeed, a patent grants "to the patentee . . . the right to exclude others from making, using, offering for sale, or selling the invention." 35 U.S.C. § 154. As one court has noted, "[t]he right to exclude, *even for a non-practicing entity*, may be the only way to fully vindicate the patentee's ownership in the patent." *BarTex Research, LLC v. FedEx Corp.*, 611 F.Supp.2d 647, 652 (E.D. Tex. 2009) (emphasis added) (determining that should a defendant "be found to infringe the asserted patent in this litigation, damages alone may not fully compensate [plaintiff] for a lengthy delay resulting from reexamination.") "If a non-practicing entity may overcome a stay based on the fact that its rights are not being vindicated, it is surely not critical that the parties be in direct competition." *Wonderland*, 858 F.Supp.2d at 464 (finding against a stay because it would "prohibit Wonderland from enforcing its right to exclude for several years, at a minimum").

Further, granting a stay denies NuTech its chosen forum, providing Noble with a clear tactical advantage. NuTech chose to file this litigation in this District (Noble's home District), to resolve its allegations of patent infringement, including any potential validity challenges to the patents-in-suit, and to vindicate its patent ownership rights. *Softview LLC v. Apple, Inc.*, Civ. No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677, *13 (D. Del. Jul. 26, 2012). "The plaintiff is the master of the complaint [and] the well-pleaded complaint rule enables him . . . to have the

---

[2] The IPR would push well past the expiration date of the '589 patent, which is February 7, 2014, thus effectively resulting in a compulsory license to Noble until after the patent expires. *See ESN*, 2008 U.S. Dist. LEXIS 108327 at *7; *Wyeth*, 2011 U.S. Dist. LEXIS 9824 at**5-6.

7

cause heard [in the forum of his choice]." *Holmes Group, Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 831 (2002). NuTech should be allowed to continue to litigate this matter in its chosen forum.

As the IPR process only applies to petitions filed after September 16, 2012, it is impossible to tell what the impact of the process might be on NuTech. Indeed, the effect of this process may not be known for years and, at this point, is purely conjectural. *See Wonderland*, 858 F.Supp.2d at 463-64 (stating that "[t]here is no guarantee that the AIA will accelerate reexamination . . . at this point, any acceleration in reexamination procedures is conjectural"); *Shurtape v. 3M Co.*, No. 5:11CV17-RLV, 2013 U.S. Dist. LEXIS 28815, *11 (W.D. N.C. Mar. 11, 2013). Thus, given the "fair possibility" that a stay would work prejudice on NuTech, and the fact that Noble cannot show, and has not even attempted to show, that there would be any hardship or inequity in continuing this litigation, this factor should way against a stay of this litigation.

  **2. A Stay Would Not Result in Simplification of the Issues**

    **a. The Statistics Cited by Noble do not Warrant a Stay**

Noble argues that a stay will prevent the parties and the Court from "expending time and resources litigating issues that are likely to be significantly modified or mooted by the IPR." (Doc. 12 at 9) It cites statistics for inter partes reexamination proceedings showing that, since the beginning of that process in 1999, 89% of reexamination certificates issued result it at least some claims being canceled or disclaimed. (*Id.*) It further states, in a conclusory manner, and without any support, that the prior art cited in its IPR petition is "likely to be case-dispositive." (*Id.* at 10)

8

First, Noble's bald assertion that the IPR is "likely to be case-dispositive" is unfounded. Indeed, it is impossible to gauge, at this stage of the proceedings, the likelihood that any claims of the '589 patent will be cancelled or modified. *See, ESN, LLC*, 2008 U.S. Dist. LEXIS 108327 at *13. The Court should not take Noble's word for the strength of its IPR petition, which the PTO has not yet even accepted.

Second, The statistics cited by Noble are entirely misleading. Noble disingenuously claims that patent reexaminations led to patent claims being cancelled or modified in the "majority" of reexamination proceedings. (*Id.*) This is misleading. According to the PTO statistics cited by Noble, there have been a total of 1659 requests for reexamination since 1999. *See Inter Partes Reexamination Filing Data – June 30, 2012*, United States Patent and Trademark Office, *available at*, http://www.uspto.gov/patents/stats/IP_quarterly_report_June_30_2012.pdf (last visited Mar. 10, 2013). Of those 1659 reexamination requests, certificates were issued on only 377, and certificates making at least some claim changes totaled 294. (*Id.*) Thus, only 294 out of 1659 requests for reexamination, or 17.7%, actually resulted in a claim change. (*Id.*) These statistics do not even take into account appeals to the Federal Circuit Court of Appeals, which may further lower that number. Additionally, it appears that in recent times, the PTO's cancellation rate has been dropping. *Wyeth*, 2011 U.S. Dist. LEXIS 9824 at **7-8.

Even taking Noble's view of the PTO statistics, all claims were cancelled or disclaimed in only 42% of reexamination certificates. (*Id.*) Thus, in the majority of cases, even after reexamination proceedings that lasted an average of three years, there remained claims to be litigated 58% of the time. (*Id.*) NuTech is therefore faced with the proposition of waiting several years for the IPR to run its course, at the end of which it will more likely than not still have claims to litigate after a long stay. NuTech will then be forced to commence litigation after

9

that long delay years down the road, when evidence may become more difficult to access as witnesses may become unavailable, memories fade, and even more time passes from the invention claimed in the '589 patent, which is already nearly twenty years old. *See Wyeth*, 2011 U.S. Dist. LEXIS 9824 at *6; *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 2011 U.S. Dist. LEXIS 11488 at *3. Indeed, courts are often loathe to grant a stay when there is a significant possibility that at least some claims will remain to be decided, even if some claims might be cancelled by the PTO in an IPR. *See, e.g., Wonderland*, 858 F.Supp. at 465 (finding that the "issue simplification" factor weighed slightly against a stay because "while it appears likely that some of the issues will change as the claims are amended, it is not clear the degree to which reexamination will simplify the issues that this Court must address").

Additionally, the statistics cited by Noble are inapposite. They apply to the previous inter partes reexamination procedure, and not the new IPR procedure, which differs in some material respects. Further, and importantly, the PTO has not granted Noble's IPR petition, thus rendering these statistics irrelevant, and making it impossible to gauge how likely it is that any of the '589 patent claims will be cancelled or modified. *See ESN*, 2008 U.S. Dist. LEXIS 108327 at *13.

### b. The IPR Will Not Resolve All Defenses and Counterclaims

Many Courts have refused to grant a stay when the IPR will not resolve all defenses and counterclaims asserted by the defendant. *See, e.g., ADA Solutions, Inc*, 826 F.Supp.2d at 351-52 (finding that simplification would not be significant because the defendants also asserted invalidity under 35 U.S.C. §§ 101, 111-13, and 132, which would not be decided in an IPR, as well as other defenses and counterclaims); *Belden*, 2010 U.S. Dist. LEXIS 90960; *Softview LLC*, 2012 U.S. Dist. LEXIS 104677 at **9-10 (issue simplification factor neutral because defendants also disputed infringement and invalidity under 35 U.S.C. §§ 101 and 112, and raised equitable

defenses of laches, waiver, estoppel, acquiescence, and/or unclean hands); *Largan Precision Co., Ltd. v. Fujifilm Corp.*, No. C 10-1318 SBA, 2011 U.S. Dist. LEXIS 25423, **9-10 (N.D. Cal. Mar. 1, 2011) (finding that the reexamination would not truly simplify the issues with respect to the patent, because reexamination would not resolve the plaintiff's claim of unenforceability due to inequitable conduct, as the only issue before the PTO in the reexamination was invalidity due to prior art).

As one court put it, "when infringement, validity under § 112, or other issues outside the purview of reexamination remain to be tried, then a stay is not favored." *Belden Techs., Inc.*, 2010 U.S. Dist. LEXIS 90960 at *7 (emphasis added). Indeed, an IPR is limited to a challenge of validity of patent claims under 35 U.S.C. §§ 102 and 103, and only on the basis of patents and printed publications. *See* 35 U.S.C. § 311(b).

In the instant case, the following defenses pled by Noble are not raised in the IPR: non-infringement, invalidity under § 101 (novelty and utility), anticipation under § 102(a) because the invention was known or used by others before invention by the patentee, anticipation under § 102(b) because the invention was in public use or on sale more than one year prior to the patent application, abandonment under § 102(c), invention by others under § 102(f), obviousness under § 103(a) proved through other than prior patents or printed publications, prosecution history estoppel, failure to disclose the "best mode" for practicing the inventions claim in the '589 patent, laches, estoppel, and waiver. (*See* Doc. 6) These defenses cannot and will not be considered in the IPR, and will still need to be tried regardless of the outcome of the reexamination. Thus, the Court should decline to require piecemeal consideration of Noble's affirmative defenses in different forums.

### c. The Court Should Determine This Case

Though it does not factor into the Court's analysis of the propriety of a stay in this case, Noble argues that this Court can benefit from the PTO's expertise in determining questions of validity of the '589 patent. (Doc. 12 at 11) However, this Court is entirely capable of making its own determination of validity. The technology involved in the '589 patent is not overly complex, and the PTO's "expertise" is not needed for the Court to understand it. *See Advanced Cartridge Techs., LLC v. Lexmark Int'l, Inc.*, No. 8:10-cv-486, 2010 U.S. Dist. LEXIS 83475, *7 (M.D. Fla. Aug. 16, 2010) (declining to grant a stay in part because the patented technology was not "overly complex," and therefore continued litigation in that Court appeared more expeditious).

Noble decries the potential for "inconsistent results" if a stay is not granted. Once again, the potential for inconsistent results does not factor into the decision to stay, since any parallel proceeding has the possibility of inconsistent results. Nevertheless, it is disingenuous of Noble to fear the potential for inconsistent results when it was Noble's decision to institute a parallel proceeding. If Noble is confident in its defense of invalidity under 35 U.S.C. §§ 102 and 103, it can seek disposition of this case on those grounds, and will likely be able to obtain adjudication on those issues prior to the PTO's final determination. Any potential benefits favoring a stay are outweighed by the interests of NuTech and the efficient administration of justice in continuing to move forward with this action. *Wyeth*, 2011 U.S. Dist. LEXIS 9824 at *10.

For these reasons, the "issue simplification" factor should weigh against granting a stay of this action in favor of the IPR.

### 3. The Stage of Litigation Should Not Weigh in Favor of a Stay

Noble claims that the Court must grant a stay because this case is in its early stages, with

12

no extensive discovery, and no trial date set. (Doc. 12 at 12) Noble's argument appears to be simply that any time an IPR is brought during the early stage of a case the Court should grant a stay. (*Id.* at 12-13) The case law does not support Noble's simplistic view.

The fact that a case is in early stage does not weigh in favor of a stay:

> Although the advanced nature of a case approaching trial may weigh heavily against granting a stay, the opposite inference – that a suit in the early stages should weigh heavily in favor of a stay – is not true. As a case progresses through the stages of litigation, the grant of a stay generally becomes more costly to the parties and to the court. Yet, just as the absence of a negative inference does not create a positive inference, so also the lesser cost of granting a stay early in the litigation process does not equate to a factor favoring a stay; the lower cost simply indicates the best time to grant a stay is in the early stages of litigation.

*Sighting System Instruments, LLC v. Prestige Law Enforcement, Inc.*, No. 3:05-CV-1560-G, 2006 U.S. Dist. LEXIS 64698 (N.D. Tex. Sept. 11, 2006); *see also Sunbeam*, 2010 U.S. Dist. LEXIS 45654 at **7-8. The early stage of litigation is the best time to grant a stay, but that does not mean that the Court should do so.[3] While the early stage of the litigation does not weight against a stay, nor does it weigh in favor of a stay.

Second, the Court should not look at the stage of this litigation in a vacuum for purposes of analyzing this factor. Indeed, the early stage of the litigation must be balanced against the stage of the IPR. *See Softview*, 2012 U.S. Dist. LEXIS 104677 at *12; *Imagevision.net, Inc. v. Internet Payment Exchange, Inc.*, No. 12-054-GMS-MPT, 2013 U.S. Dist. LEXIS 25015, *13

---

[3] Noble cites two Northern District of Ohio cases for the proposition that courts in this district "routinely" grant motions to stay during the early stage of litigation. (Doc. 12 at 12) However, these cases do not establish a bright line rule, and involved a review of all three factors. Further, in the *Lincoln* case, it was the declaratory judgment plaintiff who sought both an IPR and parallel litigation. *See Lincoln Elec. Co. v. Miller Elec. Mfg. Co.*, No. 1:06CV02981, 2007 U.S. Dist. LEXIS 66340 (N.D. Ohio Sept. 7, 2007) Thus, the plaintiff was unable to show prejudice associated with a stay, since it was the party that instituted the IPR. *Id.*

(D. Del. Feb. 25, 2013). As stated above, the PTO has not even granted Noble's IPR petition, and thus an IPR has not even been commenced. If an IPR commences, which will take place no sooner than three months from now, if at all, it will take another 12 to 18 months for the PTO to issue a final determination, which then is appealable to the Federal Circuit. On the other hand, if this case proceeds, Noble could move for summary judgment on invalidity at any time. Indeed, "judicial efficiency," a central concern when considering a motion to stay, "has a temporal component and 'mandates that the matter be decided at the earliest possible time.'" *Sunbeam*, 2010 U.S. Dist. LEXIS 45654 at *7 (*citing Am. SS. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F.Supp.2d 474 (S.D.N.Y. 2007)).

Although no trial has been set in this matter, NuTech has tried to diligently pursue its rights in order to come to a swift resolution. As allowed by Local Patent Rule No. 3, NuTech served significant discovery requests on Noble on November 20, 2012, less than two weeks after Noble answered the complaint, including requests for production, interrogatories, and requests for admission. Noble has failed to respond to these discovery requests. NuTech likewise served its initial infringement contentions well in advance of the deadline, in an attempt to spur on the deadlines keying off those contentions in the local rules. When the Court temporarily stayed this case for the parties to explore settlement, Noble refused to even provide a counter-offer to NuTech's settlement offer. Noble should not now be allowed to further delay NuTech's right to enforce its rights as a patent owner. This factor should weigh against a stay.

### III. CONCLUSION

For the foregoing reasons, this Court should deny Noble's Motion to Stay.

Date: March 15, 2013

                /s/ Jacob A. Hill
_____
Craig W. Weinlein
cweinlein@ccsb.com
  Texas State Bar No. 21095500
Jacob A. Hill
jhill@ccsb.com
  Texas State Bar No. 24044835
Alexis C. Lantz
alantz@ccsb.com
  Texas State Bar No. 24056574
David J. Diamond
ddiamond@ccsb.com
  Texas State Bar No. 24074134
CARRINGTON, COLEMAN, SLOMAN &
  BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
Tel.: (214) 855-3000
Fax: (214) 855-1333

*Attorneys for Plaintiff*
*NUtech Ventures*

## CERTIFICATE OF SERVICE

    I hereby certify that on March 15, 2013, a copy of foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion to Stay Proceedings Pending Inter Partes Review was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

                /s/ Jacob A. Hill
_____